IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


KENYA S. MEANS                                                                          Plaintiff

VS.                                               CIVIL ACTION NO. 1:04CV776KS-MTP

B & G FOOD ENTERPRISES, INC.
d/b/a TACO BELL                                                                      DEFENDANT


<u>**MEMORANDUM OPINION AND ORDER**</u>

This cause is before the court on defendant's motion for summary judgment or partial

summary judgment.   From its review of all matters made a part of the record of this case as well

as applicable law, and being thus fully advised in the premises, the court FINDS that the motion

should be GRANTED IN PART and DENIED IN PART**.**  The court specifically finds as follows:

<u>FACTUAL BACKGROUND</u>

Plaintiff, a former employee of defendant, commenced this action on October 12, 2004

alleging that she had been unlawfully discriminated against on the basis of her race.  In her

complaint, plaintiff, an African-American, alleges that she was treated differently and paid less

than a similarly situated Caucasian employee, that she was the victim of a hostile work

environment, and that she was unlawfully  terminated from her employment on the basis of her

race and/or in retaliation for her complaints about pay disparity.  The relevant underlying facts of

this case - which, for the most part, are not disputed - are as follows:

In 1993, plaintiff was hired as a Crew Member at the Taco Bell restaurant located in

Picayune, Mississippi (the "Picayune Taco Bell") by Area Manager Todd Brown (deposition of

Kenya S. Means, Dec. 22, 2005 (hereinafter "Means Dep.") 32:3-8,12-18).  Some time in 1994, plaintiff notified Valerie LeBlanc in the corporate office that Tiffany Mitchell, a Caucasian employee at the Picayune Taco Bell who was also a Crew Member at that time, (and who started working there after plaintiff) was making $5.25 an hour, while plaintiff was making $5.15 an hour.  (Means Dep. 33:16-35:3; 35:4-8).  Ms. LeBlanc told plaintiff that she would take care of the situation and following her complaint, plaintiff's pay was raised to $5.25 an hour.  (Means Dep. 34:11-17; 35:9-18 ).  In approximately 1997, plaintiff discovered that Ms. Mitchell was making $5.50 an hour, while plaintiff was still making $5.25 an hour. (Means Dep. 36:4-15).  Again, plaintiff called Ms. LeBlanc who told her that she would take care of the situation.  (Means Dep. 36:16-20).  Following that complaint, plaintiff's pay was raised to $5.50 an hour.  (Means Dep. 36:23-37:2).

        At some point thereafter, Ms. Mitchell and plaintiff both became Shift Leaders,[1] a position involving more job responsibilities than that of Crew Member.  (Means Dep. 37:3-11; 39:10-12).   Ms. Mitchell and plaintiff were both earning $6.00 an hour in that position.  (Means Dep. 38:6-9; 17-20; 39:14-15).   Ms. Mitchell then stepped down from that position to become a Crew Member, and plaintiff discovered that Ms. Mitchell continued to receive the same salary as before - $6.00 an hour.  (Means Dep. 37:12-18; 38:6-9; 39:17-40:2).  Plaintiff then decided to step down as a Shift Leader to a Crew Member, as Ms. Mitchell had done, in order to have fewer job responsibilities.  (Means Dep. 37:20-21).  When plaintiff did so, however, her pay was reduced to $5.85 an hour, even though Ms. Mitchell's pay had not been reduced.  (Means Dep.

_____

        [1] This position is also referred to at times in the parties' briefs and in the deposition transcript as Shift Manager.

37:22-24; 40:3-14).  Plaintiff complained to District Manager Andy Wilkerson and her pay was increased back to $6.00 an hour.  (Means Dep. 40:15-41:1).  Thereafter, plaintiff and Ms. Mitchell were both making $6.00 an hour as Crew Members.

By 2002, Ms. Mitchell and plaintiff had both gone back to being Shift Managers again. (Means Dep. 41:6-25).  Some time in 2002, plaintiff discovered that Ms. Mitchell was making $6.45 an hour, while plaintiff was only making $6.35 an hour.  (Means Dep. 41:9-16; 42:1-3). Plaintiff then went to Mr. Brown and told him that she had realized that Ms. Mitchell was making more money than her.  (Means Dep. 42:4-22).  Mr. Brown told plaintiff that he did not want to hear about it.  (Means Dep. 42:7; 42:25-43:2).  Plaintiff then called Ms. LeBlanc and told her that she felt she was being discriminated against because she had been at the Picayune Taco Bell longer than Ms. Mitchell, but Ms. Mitchell was always making more money than her. (Means Dep. 43:19-44:6).  Ms. LeBlanc told her she would speak with Mr. Wilkerson and Mr. Brown and would get back to her.  (Means Dep. 44:10-12).  Plaintiff called Ms. LeBlanc back a few minutes later and Ms. LeBlanc told her that she would raise her salary to $6.45 an hour. (Means Dep. 49:20-50:7).  Mr. Brown called plaintiff a few minutes later to confirm that she would be getting the ten-cent raise, and to apologize.  (Means Dep. 44:18-45:3; 50:25-51:11). Thereafter, plaintiff and Ms. Mitchell were both making $6.45 an hour as Shift Leaders.

A few months later, plaintiff's salary was raised to $7.00 an hour because she had taken on additional responsibilities.  (Means Dep. 51:20-52:13).  Ms. Mitchell, who was also a Shift Leader at this time, continued to make $6.45 an hour.  (Means Dep. 52:14-52:24).  At some point thereafter, in 2002, Ms. Mitchell stepped down for the second time from being a Shift Leader to become a Crew Member but her pay remained the same as before - $6.45 an hour.  (Means Dep.

52:24-53:3; 53:19-54:8).  In June 2002, plaintiff also decided to step down as a Shift Leader

again because she wanted to have fewer responsibilities while keeping the same pay.  (Means

Dep. 53:4-14; 54:13-17; 111:19-112:3).  Plaintiff's pay was then reduced to $6.45 an hour, the

same salary as Ms. Mitchell.  (Means Dep. 54:18-25 ).[2]  Plaintiff called Ms. LeBlanc in the

corporate office to complain about her pay being reduced.  (Means Dep. 55:10-12).  Ms. LeBlanc

told plaintiff she would take care of it, and plaintiff's salary was subsequently increased back to

$7.00 an hour although she remained a Crew Member. (Means Dep. 55:14-56:9; 112:4-8).  Ms.

Mitchell, also a Crew Member, continued to make $6.45 an hour. (Means Dep. 56:12-16).

 Ms. Mitchell stopped working at the Picayune Taco Bell in approximately October 2002.

(Means Dep. 112:14-113:14).  In approximately December 2002, plaintiff was called into Mr.

Brown's office and was told that in order for her pay to remain at $7.00 an hour, she would have

to become a Shift Leader and start working nights and weekends; otherwise, her salary would be

reduced.  (Means Dep. 45:19-24).  Plaintiff complained and told Mr. Brown that she could not do

that because of her children, and she pointed out that Ms. Mitchell did not have to work nights

and weekends.  (Means Dep. 57:6-10).  Plaintiff then asked if he would give her a raise in

exchange for her becoming Shift Manager again.  (Means Dep. 57:19-24).  A few days later, Mr.

Brown offered plaintiff $7.25 to become a Shift Manager, and plaintiff accepted.  (Means Dep.

58:15-59:4).

 On April 24, 2003, Mr. Brown came by the Taco Bell after plaintiff's shift was over and

he told her that he needed to speak with her.  (Means Dep. 95:16-96:6).  Ms. Halford was present

---

[2] Plaintiff testified that she retained some of the responsibilities of Shift Leader, such as placing truck orders.  (Means Dep. 55:5-9).

for this conversation.  (Means Dep. 96:11-16).  Mr. Brown told plaintiff that she was being fired.

(Means Dep. 96:12-14).  According to plaintiff, Mr. Brown's first reason for her termination was

that she did not have her hat on, but plaintiff explained that her shift was over.  (Means Dep.

96:20-24).  Mr. Brown then told plaintiff that she was being fired because she was receiving too

many phone calls while at work, because she and Susan Lee (manager of the Picayune Taco Bell

at the time) did not get along, and because she was refusing to work her assigned shifts.  (Means

Dep. 96:24-97:4).  According to Mr. Brown, he made the decision to discharge plaintiff after

receiving reports that she was talking on her cell phone during her work time and while she was

performing her duties such as cooking food and serving customers.[3]  (Affidavit of Todd Brown

---

[3] Defendant had distributed to its employees a policy listing a number of prohibited activities, including "personal phone calls - either outgoing or incoming - except in cases of extreme emergencies."  The policy stated that violation of any of the rules would subject employees to disciplinary action or discharge.  On February 5, 1994, plaintiff signed a statement acknowledging that she had read and understood the policy  (Motion for Summary Judgment ("MSJ") Ex. 2), and in her deposition she admitted that she recalled receiving this policy. (Means Dep. 76:10-24).  However, plaintiff testified that her understanding was that this policy did not specifically prohibit cell phone usage.  (Means Dep. 72:16-73:6; 76:21-25).  In addition to this policy, Defendant also implemented a specific cell phone policy prohibiting employees from using a cell phone while on the clock.  The policy warns employees that a violation will result in them being written up, and that a second violation can lead to termination.  (MSJ, Ex. 3).  According to Mr. Brown, this cell phone policy was posted on the wall by the cooler at the Picayune Taco Bell, and was also discussed in meetings with employees.  (Brown Aff. Para 3). However, Ms. Means denied that she was ever aware of this.  (Means Dep. 77:3-8).  Indeed, Ms. Means testified that it was her belief that there was no policy prohibiting cell phone usage while working, and that it was okay for her to use a cell phone while working, depending on what she was doing.  (Means Dep. 73:3-14).  Ms. Means testified that she brought her cell phone to work with her but she used it only while on a break.  (Means Dep. 73:15-74:5).  In her EEOC Charge, plaintiff avers that Sheila Halford, a Caucasian co-worker at the Picayune Taco Bell, had asked another co-worker, Rose Seal, to lie and state that plaintiff had a cell phone, but Ms. Seal refused to do so.  (MSJ, Ex. 5).  The EEOC Charge makes reference to an attached affidavit to support that allegation but the affidavit was not included with the EEOC Charge attached as an exhibit to the complaint,  nor was it included with the EEOC Charge attached to the motion for summary judgment.

5

(hereinafter "Brown Aff.") ¶ 4).  In addition, Mr. Brown was told that plaintiff would refuse to work shifts assigned to her.  (Brown Aff. ¶ 4).

Plaintiff told Mr. Brown that she should have been warned about her conduct before being discharged.  (Means Dep. 97:6-12).  Plaintiff also told Mr. Brown that she needed a job because she had just purchased a home, and that she did not agree with his allegations.  (Means Dep. 97:20-24).  Mr. Brown then offered plaintiff a transfer to the company's Slidell, Louisana location (the "Slidell Taco Bell") as an alternative to being fired.[4]  (Brown Aff. ¶ 5; Means Dep. 97:24-98:3).  Plaintiff was given thirty minutes to decide whether to accept the offer.  (Means Dep. 98:2-3).  Plaintiff told Mr. Brown that she could not accept the offer because the Slidell Taco Bell is far from where plaintiff lives and she has small children whom she needs to pick up in the evening.  (Means Dep. 98:4-10).  In addition, plaintiff felt that Sheila Halford, a Caucasian employee who also worked at the Picayune Taco Bell and had less seniority than plaintiff, should have been offered the transfer instead.  (Means Dep. 98:11-21).  After plaintiff turned down the transfer, Mr. Brown informed her that she was fired.  (Brown Aff. ¶ 5).

On August 15, 2003, plaintiff filed a charge of discrimination with the EEOC (the "EEOC Charge"), alleging race discrimination and retaliatory discharge. After receiving her right to sue notice from the EEOC dated July 14, 2004, plaintiff commenced this lawsuit.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[4] The parties dispute which position was offered to plaintiff.  Plaintiff avers that it was Store Manager (Means Dep. 98:22-99:10; 100:16-101:6), while Mr. Brown states in his affidavit that it was Shift Leader.  (Brown Aff. ¶ 5).

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must "identify specific evidence in the . . . record demonstrating that there is a material fact issue concerning the essential elements of its case.'"  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23**; *Anderson*, 477 U.S. at 257.  "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial."**  *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) **(citation omitted).**

**In analyzing a motion for summary judgment, all evidence must be "construed in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams. v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citation omitted).  "The evidence of the non-movant is**

to be believed, and all justifiable inferences are to be drawn in her favor." *Palmer v. BRG, Inc.*, 498 U.S. 46, 49 n.5 (1990) (*quoting Anderson*, 477 U.S. at 255). Nevertheless, "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "In such situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

## ANALYSIS

In her complaint, plaintiff has asserted eight claims against defendant: racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, hostile work environment discrimination (also under Title VII), discrimination under the Equal Pay Act, 29 U.S.C. § 206(d)(1), breach of contract, intentional infliction of emotional distress,[5] negligence *per se*, and negligent infliction of emotional distress. Defendant has moved for summary judgment on all of the claims. Each claim will be addressed separately below.

---

[5] Plaintiff has asserted two separate causes of action for intentional infliction of emotional distress (counts four and seven) but they are nearly identical in substance. The only difference between them is that in count four, plaintiff explicitly references her hostile work environment claim, whereas in count seven, plaintiff makes a more general statement about the "manner in which she was treated." For the purposes of this motion, both causes of action will be treated as one and the same.

## Federal Claims

## Count One - Racial Discrimination

Plaintiff has asserted a Title VII claim for race discrimination on several different theories: that she was treated differently and paid less than a similarly-situated Caucasian employee, and that she was fired because of her race and/or in retaliation for her complaints about the alleged pay disparity. Defendant's motion for summary judgment addresses only plaintiff's pay disparity and retaliation claims and therefore only these claims will be addressed below.[6]

## Pay Disparity

The court does not reach the merits *vel non* of plaintiff's pay disparity claim, as it finds that the claim is time-barred. In order to bring a Title VII claim, a plaintiff must file her charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *see Merrill v. S. Methodist Univ.*, 806 F.2d 600, 604 (5th Cir. 1986).[7] Timely filing of an EEOC charge is a precondition to

---

[6] Defendant has stated in its motion for summary judgment that plaintiff's only claim with respect to her termination is retaliatory discharge, and that she is not alleging that she was fired on the basis of race. However, this appears to be incorrect. In her response to the motion for summary judgment, plaintiff states: "The Discrimination was ongoing up and until termination. Termination itself was discriminatory. Plaintiff also alleges, in support of her Title VII claim, that "her dismissal was discrimination" because her Caucasian co-worker was not offered the transfer to the Slidell Taco Bell and was not terminated. Thus, the court assumes that plaintiff is alleging, as one the bases for her Title VII claim, that her termination was itself racially discriminatory. Since defendant did not move for summary judgment on this claim, the court will not address that claim in this opinion.

[7] That section of Title VII also provides that where the party "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice

filing in district court, and failure to timely file a charge with the EEOC bars suit on that claim.  *See Palma v. New Orleans*, 115 Fed. Appx. 191, 194 (5th Cir. 2004); *Lovett v. Barbour, Int'l.,* 2005 U.S. Dist. LEXIS 40416, at * 7-8 (S.D. Miss. 2005); *accord Wilson v. West*, 962 F.Supp. 939, 944 (S.D. Miss. 1997) ("If an EEOC charge is filed untimely, a suit based upon the untimely charge shall also be dismissed.") (citations omitted).   In this case, plaintiff filed her EEOC Charge on or about August 19, 2003, so any claim arising prior to February 19, 2003 is time-barred.  Plaintiff's final complaint of pay disparity was sometime in 2002.[8]   Therefore, plaintiff's pay disparity claim is  time-barred and summary judgment for defendant is granted.

## Retaliatory Discharge

Title VII makes it unlawful for an employer to retaliate against an employee "because [that employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a).  To survive summary judgment on a Title VII retaliation claim, plaintiff must make a *prima facie* showing that: 1) she engaged in a protected activity; 2) an adverse employment action occurred; and 3) there is a causal link between the protected activity and the adverse employment action.  *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

---

or to institute criminal proceedings with respect thereto", the charge must be filed with the EEOC within 300 days of the alleged unlawful practice, or within thirty days after that proceeding has been terminated, whichever is earlier.  42 U.S.C. § 2000e-5(e)(1).  No such proceedings were instituted by plaintiff and therefore this provision is inapplicable to the instant case.

[8] It could not have been later than October 2002, when Ms. Mitchell stopped working at the Picayune Taco Bell.  Plaintiff has admitted that Ms. Mitchell was the only Caucasian employee with whom there was any issue regarding a pay disparity.  (Means Dep. 59:22-60:14).

The parties' dispute about this claim centers around the third element, causation. In order to establish causation, plaintiff must prove that "but for" the retaliation, she would not have been terminated. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985); *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001), *reh'g denied*, 277 F.3d 1375 (5th Cir. 2001), *cert. denied*, 536 U.S. 922 (2006).  Put another way, "[e]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Rubenstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 402-03 (5th Cir. 2001), *reh'g denied en banc*, 232 F.3d 212, *cert. denied*, 532 U.S. 937 (2001)..

Plaintiff claims that she was fired in retaliation for her complaints about pay disparity.  In response, defendant argues that plaintiff was terminated because she was talking on her cell phone during work hours and while performing her work duties, in violation of company policy, and because she refused to work shifts assigned to her. Plaintiff denies both of these allegations.

The court notes that plaintiff had just received a requested raise several months before she was terminated, in December 2002, in exchange for becoming a Shift Leader again.  It is hard to understand how a few months later plaintiff was discharged for her alleged insubordination and violation of company policy, when she had been working at the Taco Bell location for nine years without major disciplinary incident.[9]  Moreover,

_____

[9] It is true that there were several "employee counseling notices" issued to plaintiff during her tenure at the Picayune Taco Bell, in contrast to her statement in her EEOC Charge that there had never been any prior disciplinary actions taken against her.  (Means Dep. 106:10–108:22).

11

defendant's own cell phone policy which was allegedly posted at the Picayune Taco Bell, states that a first violation will result in the employee being written up, and there is no evidence in the record that plaintiff was written up or warned before termination.  Finally, if plaintiff refused to work shifts assigned to her and had violated the cell phone policy, why was she offered a transfer to the Slidell Taco Bell as an alternative to termination?

Defendant further argues that plaintiff's final complaint of pay disparity was made in June 2002 but she was not fired until April 2003, so, therefore, there is no causal link between her complaints about race discrimination and her termination.  However, although timing may be relevant to determining whether a discharge is retaliatory, it is not dispositive.  *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (holding lapse of time between filing of EEOC charge and alleged retaliatory conduct is just one element of the causation inquiry).  The court finds that in light of the other facts surrounding plaintiff's discharge, discussed above, the fact that ten months lapsed from plaintiff's last complaint of pay disparity to her discharge does not preclude a finding of causation.

As plaintiff has made a *prima facie* showing of retaliatory discharge, defendant has the burden of demonstrating a legitimate, non-retaliatory reason for her termination.  *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  If defendant can make that showing, plaintiff must show that the articulated reason was a mere pretext and retaliation was the real motive for her termination.  *Id.*  As discussed above, defendant has offered two reasons for plaintiff's termination:  first, that Mr. Brown had received complaints that plaintiff was

---

However, these notices do not relate to the alleged reasons for plaintiff's termination.  For example, plaintiff received notices for missing work, for failing to attend a mandatory meeting, and for cash shortages in her register. (Means Dep. 106:21-108:22).

using her cell phone while working, and second, that plaintiff was refusing to work shifts assigned to her by Ms. Lee, the Picayune Taco Bell manager.

"To satisfy the statutory burden, the plaintiff must offer *some* evidence...that permits the jury to infer that the proffered explanation was a pretext for illegal discrimination.  The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so."  *Swanson v. Gen'l Services Admin.*, 110 F.3d 1180, 1185 (5th Cir. 1997) (emphasis in original) (citations omitted); *see also EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444-45 (5th Cir. 1995) ("In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge...Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient.") (citations omitted).

As discussed above, plaintiff has disputed that she was making cell phone calls while working, and she has also disputed that she refused to work shifts assigned to her.  Plaintiff testified that Mr. Brown was angry that she had been making complaints about pay disparity, and that he was ignoring her and treating her differently than other employees as a result.  Plaintiff worked at the Picayune Taco Bell for nine years before she was terminated, and received a raise four months prior to termination.  There is no evidence that plaintiff ever received a warning or any discipline for violating the cell phone policy.  Finally, the court finds the fact that plaintiff was offered a transfer to the Slidell Taco Bell as an alternative to termination to be highly significant because it undermines defendant's

position that plaintiff was insubordinate and worthy of termination.  The court concludes that plaintiff has met her burden and therefore summary judgment on this claim is denied.

<u>Count Three - Hostile Work Environment Discrimination</u>

As a threshold matter, defendant has argued that plaintiff failed to exhaust her administrative remedies on this claim because it was not included in her EEOC Charge.  It is well-established that a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC prior to filing a suit under Title VII in federal court.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003).  The subsequent lawsuit "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission."  *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994) (citation omitted); *see also Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 396 (5th Cir. 2000), *reh'g denied*, 2000 U.S. App. LEXIS 24843 (5th Cir. 2000) ("The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citation omitted).

However, "[t]he scope of the inquiry is not...limited to the exact charge brought to the EEOC."  *McDonald v. S. Diversified Indus., Inc.*, 2003 U.S. Dist. LEXIS 26955, at * 7-8 (2003) (*citing Young v. Houston*, 906 F.2d 177, 179 (5th Cir. 1990)).  Rather, in determining whether an EEOC investigation of hostile work environment could reasonably be expected to grow out of plaintiff's EEOC charge, the court must look to the factual statement contained therein.  *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)

(stating that "the crucial element of a charge of discrimination is the factual statement contained" in the EEOC charge).  In this respect, it is important to keep in mind that "EEOC charges are to be given a liberal construction, especially those authored by unlawyered complainants."  *McDonald*, 2003 U.S. Dist. LEXIS 26955, at *8 (*citing Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)).

.       In *McDonald*, plaintiff filed an EEOC charge alleging racial discrimination in pay and then filed a lawsuit in which she also asserted a hostile work environment claim.  Defendant argued that the claim should be dismissed because it was not included in the EEOC charge.  *Id.* at *7.  Plaintiff, however, argued that the hostile work environment claim was a "by-product" of racial discrimination and as such, it was reasonably related to the racial discrimination claim. *Id.* at 10.  There was no evidence in the record that the EEOC had investigated anything other than pay disparity.  *Id.* at *12.  The court decided that because of a lack of factually similar Fifth Circuit precedent, and because the case presented a "close call," the court would turn to the merits of plaintiff's hostile work environment claim.  *Id.*  In the case *sub judice*, the EEOC Charge alleges that plaintiff was "discriminated against based upon my race & retaliation...based upon lack of raises and adverse employment decisions created by management."  Although no mention is made of a hostile work environment claim *per se*, some of the facts relating to that claim - plaintiff's June 2002 complaint of pay disparity and her April 24, 2003 termination - are set forth in the EEOC Charge.  The court finds that an investigation into plaintiff's hostile work environment allegations could reasonably be expected to grow out of plaintiff's EEOC charge, or, at the very least, it is a close call, and therefore the court will turn to the merits

*vel non* of the claim.  *See id.* at \*12.

In order to establish a *prima facie* case of a hostile work environment under Title VII, plaintiff must prove: 1) she belongs to a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment complained of was based on her protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Ramsey*, 286 F.3d at 268 (citation omitted).  In her response to the motion for summary judgment, plaintiff argues that the incidents of pay disparity created the hostile work environment.  In addition, in her deposition plaintiff offered the following facts in support of her hostile work environment claim:  that Mr. Brown was upset when she would call the corporate office to complain, and he would tell her not to call (Means Dep. 65:6-15, 21-22); that Mr. Brown would meet with Ms. Mitchell and Ms. Halford privately in his office and would ask them to do various tasks rather than plaintiff (Means Dep. 66:2-15); that when plaintiff tried to talk to Mr. Brown he would ignore her  (Means Dep. 67:2-6); that on one

16

occasion, plaintiff asked Mr. Brown if he wanted her to do a truck order and he "rudely" told her that Ms. Mitchell had done it (Means Dep. 67:10-20); and that Ms. Mitchell, as well as some other employees, distanced themselves from plaintiff after she had made complaints to the corporate office regarding pay disparity.  (Means Dep. 70:18-25). Plaintiff further admitted that every time she complained about pay disparity between herself and Ms. Mitchell, defendant would rectify the situation to plaintiff's satisfaction (Means Dep. 60:18-25), and that neither Mr. Brown nor Ms. Mitchell ever made any racial comments to her.  (Means Dep. 68:13-15, 69:23-70:1).

The court finds that these facts simply do not rise to the level of a hostile work environment and therefore summary judgment for defendant on this claim is warranted.

### Count Six - Equal Pay Act Discrimination

Under the Equal Pay Act ("EPA"), an employer is prohibited from gender-based discrimination where the jobs performed require equal skill, effort, and responsibility and are performed under similar conditions.  29 U.S.C. § 206(d)(1).  In order to establish a *prima facie* case of discrimination under the EPA, plaintiff must offer proof that she was paid less than a male employee in a similar position under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)*; Peters v. Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987).

Plaintiff cannot establish a *prima facie* case under the EPA because she has offered no evidence that a *male* employee was paid more than her; to the contrary, she is claiming that a *female*, white co-worker was paid more than her, constituting *race* discrimination. Indeed, the allegation contained in "Count Six - Equal Pay Act Discrimination" states:

17

**"Plaintiff was discriminated against based on her *race* when she was paid less than similarly situated Caucasian [*sic*] holding the same position and performing the same duties."[10]  (emphasis added).  During her deposition plaintiff admitted that she was not alleging that any males were paid more than her, and that in fact there were no males at her Taco Bell franchise who were paid more than her. (Means Dep. 61:15-63:16; 81:9-18). Plaintiff has offered no facts in support of this claim, and did not address it in her response to the motion for summary judgment.  Defendant is entitled to summary judgment on this claim.**

**State Law Claims**

**<u>Count Two - Breach of Contract</u>**

**Plaintiff has asserted a claim for breach of contract based on the "implied in fact employment contract" created by an employee handbook supplied by defendant to plaintiff (the "Employee Handbook") that contains various policies and procedures governing employment with defendant.  Plaintiff alleges that pursuant to the Employee Handbook, "each party had a duty to perform the [employment] agreement fairly and in good faith. This duty was imposed expressly, through verbal promises, and implied in fact through the employee handbook and evaluations."  Plaintiff alleges that as a result of the alleged discrimination against her, defendants breached the "express and implied in fact covenant of good faith and fair dealing."**

---

[10] There are a few references to gender in the complaint.  For example, Count Three - "Hostile Work Environment Discrimination" - alleges that plaintiff "was subjected to a hostile work environment solely on the basis of his race and gender."  That count erroneously refers to plaintiff as a male, and also states that defendant is Tenet Health System, so in all likelihood the complaint was based on a complaint from a different case.

There is no dispute that plaintiff was an at-will employee of Taco Bell. Plaintiff did not have an employee contract with defendant, a fact that she admitted in her deposition (Means Dep. 77:22-25; 80:1-5). Under Mississippi law, where an employee is at-will, either party may terminate the employment relationship at any time, for any reason. *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987); *Slatery v. N.E. Mississippi Contract Procurement, Inc.*, 747 So. 2d 257, 259 (Miss. 1999).

However, the Mississippi Supreme Court has carved out an exception to the at-will doctrine that is relevant to the instant case: where an employer provides its employees with a manual that sets forth procedures to be followed in reprimanding, suspending or discharging its employees, the employer is obligated to follow those provisions, even in the absence of a formal employment contract. *Bobbitt v. The Orchard, Ltd.*, 603 So. 2d 356, 361-62 (Miss. 1992). Subsequent Mississippi cases have qualified this exception, holding that an employer may avoid creating a contract of employment by having its employees sign a disclaimer stating that despite the existence of the employee handbook, their employment relationship remains at-will. *See*, *e.g., Byrd v. Imperial Palace*, 807 So. 2d 433, 436-37 (Miss. 2001) ("when there is a disclaimer which expressly provides that the employment relationship is at-will, the handbook in question does not create a contractual obligation that overrides the at-will doctrine"); *McDaniel v. Mississippi Baptist Med. Ctr.*, 869 F.Supp. 445, 453 (S.D. Miss. 1994) (granting summary judgment for employer based on language in handbook expressly reserving employer's right to terminate without cause); *Hartle v. Packard Elec.*, 626 So. 2d 106, 109 (Miss. 1993) ("An employee handbook cannot be considered a contract between the employer and the employee where the handbook

explicitly states that the employee can be terminated at will."); *Eaves v. K-Mart Corp*., 193 F.Supp. 2d 887, 894 (S.D. Miss. 2001) (same).

There are no magic words necessary in order to effectively disclaim a contract and preserve the at-will employment relationship.   Indeed, in *Lee v. Golden Triangle Planning & Dev. Dist. Inc.*, 797 So. 2d 845, 848(Miss. 2001), the Court stated:  "Nowhere in the *Bobbitt* decision did the Court state that an employer must use specific language in a disclaimer to preserve the at-will nature of employment.  Where there is 'something' in the employee handbook disclaiming a contract of employment, the rule developed in *Bobbitt* does not apply."  (*citing McDaniel*, 869 F.Supp. at 453).  In the case *sub judice*, plaintiff was provided with a "General Policies and Procedures" manual which expressly provides:  "This restaurant policies and procedures manual does not constitute, nor does it intend to constitute, a contract of employment."   Plaintiff signed the manual, acknowledging that she had read it and understood its contents.  In her deposition, plaintiff admitted that she understood when she signed the manual that she was not working under any contract with defendant.  (Means Dep. 79:10-80:5). Language similar to the language of the Employee Handbook has been held by Mississippi courts to be sufficient to operate as an effective disclaimer of a contractual relationship.  *See, e.g.*, *Hartle*, 626 So. 2d at 109 ("The policies and procedures in [this] handbook do not constitute a legal contract...."); *Lee*, 797 So. 2d at 848 ("This handbook and the presentation thereof is not to be considered an actual or implied contract between the District and any employee"); *McDaniel*, 869 F.Supp. at 452 ("This handbook is not a contract of employment, either express or implied; confers no property interest in one's job . . . .").

20

In her response to the motion for summary judgment, plaintiff has neither set forth nor identified any additional facts to support her claim nor has she demonstrated the existence of any triable issue of fact on this claim; indeed, plaintiff did not address the breach of contract claim at all in her response to the motion for summary judgment. Accordingly, as plaintiff was an at-will employee of defendant, and no exception to the at-will doctrine applies, summary judgment for defendant with respect to the breach of contract claim is warranted. *See Lee*, 797 So. 2d at 848; *McDaniel*, 869 F.Supp. at 453; *Byrd*, 807 So. 2d at 448; *Hartle*, 626 So. 2d at 109-110.

<u>Counts Four and Seven - Intentional Infliction of Emotional Distress</u>

Plaintiff alleges in Count Four that the alleged discrimination and hostile work environment "were intentional and reckless acts causing Plaintiff to suffer extreme emotional distress and mental anguish; which manifested into physical symptoms." Plaintiff alleges in Count Seven that defendant "intentionally inflicted emotional distress upon the Plaintiff in the manner in which she was treated at her place of employment."

In order to state a cause of action under Mississippi law for the tort of intentional infliction of emotional distress, the defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron USA, Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004), *reh'g denied*, 2004 Miss. App. LEXIS 513 (Miss. Ct. App. 2004) (citation omitted); *see also Eaves v. K-Mart Corp.*, 193 F.Supp. 2d at 894 ("To be actionable, a defendant's conduct should evoke outrage or revulsion."). Thus, a cause of action does not lie for "mere insults, indignities, threats,

annoyances, petty oppression or other trivialities." *Raiola*, 872 So. 2d at 85.

In light of this high standard, therefore, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee*, 797 So. 2d at 851 (citations omitted); *see also Raiola*, 913 F.Supp. at 982 (same). In general, causes of action for intentional infliction of emotional distress within the context of a workplace environment are "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Lee*, 797 So. 2d at 851 (citations omitted; *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982-83 (N.D. Miss. 1996) (same) (citations omitted). Indeed, the Fifth Circuit has noted that "[o]nly in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654-55 (5th Cir. 1994), *reh'g denied en banc*, 1994 U.S. App. LEXIS 10164 (5th Cir. 1994). *Accord Brown v. Inter-City Fed'l Bank for Savings*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999) ("More is required to support an intentional infliction of emotional distress recovery than the usual age discrimination claim.").

The evidence in the record demonstrates that plaintiff made several complaints of pay disparity to the corporate office, and plaintiff testified that each time the problem was fixed to her satisfaction. At her deposition, plaintiff testified that she was the victim of a hostile work environment because of the alleged incidents of pay disparity, that Mr. Brown was upset when she would call the corporate office to complain, and he would tell her not to call, that Mr. Brown would meet with Ms. Mitchell and Ms. Halford privately in his office and would ask them to do various tasks rather than plaintiff, that when plaintiff

22

tried to talk to Mr. Brown he would ignore her, that on one occasion, plaintiff asked Mr. Brown if he wanted her to do a truck order and he "rudely" told her that Ms. Mitchell had done it, and that Ms. Mitchell, as well as some other employees, distanced themselves from plaintiff after she had made complaints to the corporate office regarding pay disparity. Plaintiff testified that neither Mr. Brown nor Ms. Mitchell ever made any racial comments to her.

In her deposition, plaintiff was questioned about the emotional distress she allegedly suffered as a result of her experiences at the Picayune Taco Bell.  Plaintiff testified that her pre-existing diabetic condition was aggravated, requiring her medication to be increased by her regular physicians, and that she suffered stress as a result of losing her job. (Means Dep. pp. 25:19-30:21).  Plaintiff testified that she never sought the care of a mental health professional.  (Means Dep. 30:7-14).   In opposition to summary judgment, plaintiff has not identified or offered any additional evidence to support her claim or to demonstrate that a genuine issue as to a material fact exists.[11]

The court finds that the evidence in the record falls well short of what is required for plaintiff to have a viable claim for intentional infliction of emotional distress and therefore summary judgment for defendant is warranted.

### Count Five - Negligence *Per Se*

---

[11] Rather, plaintiff simply states in conclusory fashion: "The mere fact that Title VII was established and Plaintiff, being of a protected class ahs [*sic*] filed a lawsuit against the defendant for unfair and disparate treatment establishes extreme behavior.  Society has been safeguarded from such behaviors.  When the [*sic*] are exhibited, they are considered outrageous and dealt with inside the law."

Plaintiff has alleged that defendant was negligent *per se* in allowing the alleged hostile work environment to exist.  The court need not reach the substance of this claim, as it agrees with defendant that it is barred by the exclusive remedy provision of the Mississippi Workers' Compensation statute.  Mississippi Code Annotated § 71-3-9.[12]  In *Campbell v. Jackson Business Forms Co.*, 841 F.Supp. 772 (S.D. Miss. 1994), plaintiff sued her employer alleging that she had been sexually harassed and asserting claims under Title VII, as well as various state law claims, including negligent supervision.  The court dismissed this claim, holding that it was "clearly barred" by the Workers' Compensation statute.  *Id.* at 774.  "Because [plaintiff] alleges that her claim arose out of the employer-employee relationship between her and [defendant], and because the tort claim is clearly grounded in negligence, her negligent supervision claim...is barred by the Workers' Compensation Law.  *Id.* (citations omitted).

Similarly, in *Disney v. Horton*, 2000 U.S. Dist. LEXIS 5359, at *27-28 (N.D. Miss. 2000), the court granted summary judgment to defendant on plaintiff's claim for negligent infliction of emotional distress based on the alleged sexual harassment she suffered while an employee of defendant, because "Mississippi cases which have considered the viability of a negligence claim in the employer/employee context refused to allow such an action."

---

[12] This section provides: "The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee...at common law or otherwise from such employer on account of such injury...."  The Mississippi Supreme Court has carved out a narrow exception to this provision, holding that an employee can sue her employer in tort where the injury was caused by the willful act of an employee acting in the course of employment and in furtherance of the employer's business.  *Miller v. McRae's, Inc.*, 444 So. 2d 368, 371-72 (Miss. 1984).  Allegations of negligence do not meet this exception.  *Mullins v. Biglane Operating Co.*, 778 F.2d 277, 279 (5th Cir. 1985).

*See also Allen v. NPC Int'l*, 1996 U.S. Dist. LEXIS 21373, at \*15 (N.D. Miss. 1996) (noting that "any state tort claim grounded in negligence asserted by the plaintiff would be barred by the exclusive remedy provision of the Mississippi Workers' Compensation Law"); *Griffin v. Futorian Corp.*, 533 So. 2d 461, 463-64 (Miss. 1988) (holding that workers' compensation barred employee's claim that employer willfully failed to remedy a situation that caused injury).  Thus, summary judgment is granted for defendant on this claim.

### Count Eight - Negligent Infliction of Emotional Distress

As with Count Five above, this claim is barred by the Mississippi Worker's Compensation Statute, Mississippi Code Annotated § 71-3-9, and therefore summary judgment is granted for defendant.  *See, e.g.*, *Disney*, 2000 U.S. Dist. LEXIS 5359; *Allen*, 1996 U.S. Dist. LEXIS 21373; *Campbell*, 841 F.Supp. 772.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted with respect to plaintiff's claims of race discrimination on the basis of disparate pay under Title VII,  Equal Pay Act,  hostile work environment, breach of contract, intentional infliction of emotional distress, negligence *per se* and negligent infliction of emotional distress; and defendant's motion for summary judgment is denied with respect to plaintiff's retaliation claim.

SO ORDERED and ADJUDGED on this, the 13th day of September, 2006.

s/ *Keith Starrett*

UNITED STATES DISTRICT JUDGE